United States Court of Appeals

For the Eighth Circuit

_____

No. 24-2519

_____

United States of America

*Plaintiff - Appellee*

v.

Robert Lee Drayton, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: October 20, 2025
Filed: July 13, 2026

_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Robert Lee Drayton, Jr., was indicted for possession with intent to distribute a controlled substance and possession of a firearm in furtherance of a drug trafficking crime. Following denial of his motion to suppress after an evidentiary hearing,[1]

---

[1]Following the hearing, the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa, issued a lengthy Report and

Drayton entered a conditional guilty plea on both counts and now appeals the denial of the motion to suppress, raising many issues the district court rejected. "In an appeal from a district court's denial of a motion to suppress evidence, this court reviews factual findings for clear error, and questions of constitutional law *de novo*." United States v. Givens, 763 F.3d 987, 989 (8th Cir. 2014) (quotation omitted), cert. denied, 574 U.S. 1202 (2015).

## I. Background

The issues raised on appeal arise primarily from extended encounters between Cedar Rapids police and Drayton on February 23, 2023. Those encounters require a brief summary to frame the issues. On February 16, Cedar Rapids police uncovered a substantial quantity of methamphetamine during a traffic stop. The driver said he received the drugs from his source, Robert Drayton, and agreed to become a confidential informant ("CI") in the police investigation of Drayton. On February 23, the CI told the police that Drayton had received a load of methamphetamine that he would be packaging at his home that day. Police began surveilling Drayton's home. They saw a car arrive around 1:30 P.M. and leave after nine minutes; Drayton and his girlfriend left shortly thereafter. The CI advised that Drayton had not yet received the controlled substances.

Officers followed Drayton's car and saw it park at an intersection. Another man entered the vehicle for a few minutes and spoke briefly with Drayton. Suspecting a drug transaction, officers conducted a traffic stop and found a gun, two MDMA pills, and eight grams of methamphetamine. Drayton and his girlfriend were

Recommendation that the motion to suppress be denied. The Honorable C.J. Williams, Chief Judge of the Northern District of Iowa, adopted the Report and Recommendation and denied Drayton's motion to suppress.

not detained.[2] Continuing their surveillance of the car, police saw Drayton engage in what appeared to be multiple drug transactions that afternoon. He drove around Cedar Rapids, stopping in several public parking lots where persons would speak to Drayton inside his car for a few minutes and exit the vehicle. Later in the afternoon, officers saw Drayton drop off his girlfriend and drive to the Marcus Theatres parking lot. Another van pulled alongside. A man exited the van and placed a bag in the backseat of Drayton's car. Officers suspected the delivery of drugs.

At 4:00 P.M. Officer Matthew Jenatscheck in an unmarked patrol car was asked to be in that area. He knew from police dispatch reports that other officers observed Drayton pull into the parking lot where another man put a bag in his vehicle. Jenatscheck went to the parking lot and followed Drayton when he left and drove onto Interstate I-380. Canine Officer Cody Vry also followed Drayton in another police car. As Drayton's car traveled southbound, Jenatscheck saw it hit the fog line three times. Jenatscheck turned on his lights and initiated a traffic stop. Drayton changed lanes without signaling before pulling to a stop. Vry and two other officers joined the traffic stop.

Officer Jenatscheck exited his patrol car and went to the window of Drayton's vehicle. Drayton handed Jenatscheck his driver's license. While Jenatscheck ran a routine check of the license information in his patrol car, Officer Vry conducted an open-air dog sniff around Drayton's car. Before Jenatscheck completed the routine check, Vry's drug dog alerted on the vehicle. Officers took Drayton into custody and searched his car, where they found a handgun and a duffel bag containing what field lab tests confirmed were several kilograms of methamphetamine. Police arrested Drayton and seized two cellphones found in his car.

---

[2]Drayton does not challenge the constitutionality of this stop.

-3-

Police took Drayton into custody and brought him to an interview room, where they detained Drayton while other officers executed a warrant search of his home. Expressly waiving his Miranda rights, Drayton told investigators that he picked up the duffel bag from a third-party and was waiting for a phone call with instructions for a drop-off point. He told investigators he had dropped off similar packages four times in the past three months. He denied knowing their contents but agreed with the officers that the packages likely contained drugs or weapons. A sample of Drayton's urine tested positive for methamphetamine and other drugs. In the warrant search of Drayton's home, officers found five guns, methamphetamine and other drugs, $4,774 in cash, and drug packaging material. On April 3, Cedar Rapids Police Investigator and Drug Enforcement Agency Task Force Officer Matthew Cummings applied for, and Magistrate Judge Roberts issued, a warrant to search Drayton's cellphones. Executing that warrant, police found conversations about drug transactions.

On April 5, the government filed a grand jury indictment charging Drayton with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Drayton moved to suppress the contraband seized during the second stop of his vehicle, his admissions during the following police station interview, evidence collected as a result of the warrant search of his home on February 23 and his cellphones in April, and the results of drug tests of the duffel bag and his urine. Drayton argued (i) police lacked reasonable suspicion or probable cause to execute the second traffic stop; (ii) Officers Jenatscheck and Vry impermissibly prolonged the traffic stop to conduct the dog sniff; and (iii) all subsequent evidence including his incriminating statements in the police interview and the warrant searches of his residence and cellphones were unconstitutional fruit of this poisonous tree.

On September 5, Magistrate Judge Roberts conducted an evidentiary hearing on Drayton's motion to suppress. Cedar Rapids Police Officers Jenatscheck, Vry,

Cummings, and Mitchell Magill testified for the government and were thoroughly cross-examined. The Magistrate Judge found them credible. On October 10, the Magistrate Judge issued a 43-page Report and Recommendation that Drayton's motion to suppress be denied. The district court adopted the Report and Recommendation in a 17-page Order dated November 16. Drayton then entered a conditional plea of guilty to both charges, which the district court accepted. This appeal followed. On appeal, Drayton again argues there was no probable cause or reasonable suspicion to conduct the second traffic stop; if the initial stop was valid, it was unconstitutionally prolonged; his incriminating statements at the police station interview were the result of the invalid traffic stop, and their exclusion was not purged or attenuated by Miranda warnings given 30-60 minutes later; and the warrant search of his residence on February 23 was the fruit of a poisonous tree, information obtained as a result of the invalid traffic stop.[3]

After careful consideration of the evidence relevant to these suppression issues, we agree with the district court's thorough analysis and therefore affirm.

## II. Discussion

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. When police seize evidence pursuant to an unlawful search, the exclusionary rule prohibits admission of that evidence in criminal proceedings, subject to several exceptions. United States v. Escudero, 100 F.4th 964, 968 (8th Cir. 2024). We address Drayton's Fourth Amendment claims in turn. As Drayton's Brief on appeal acknowledges, the validity of the second traffic stop is the essential Fourth Amendment question.

---

[3]The district court also rejected Drayton's contention that evidence obtained from the warrant search of his cellphones was poisoned fruit. As Drayton does not pursue this issue on appeal, we decline to consider it.

## A. The Traffic Stop

Drayton argues that Officer Jenatscheck lacked probable cause or reasonable suspicion to conduct the second traffic stop. "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." Givens, 763 F.3d at 989 (citation omitted). A traffic violation is sufficient to establish probable cause. "Probable cause to conduct a traffic stop exists as long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." United States v. Linnell, 93 F.4th 1102, 1105 (8th Cir. 2024) (cleaned up). Reasonable suspicion is also sufficient to conduct a traffic stop. Reasonable suspicion requires an officer to be "aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed based on the totality of the circumstances." United States v. Merrett, 8 F.4th 743, 750 (8th Cir. 2021) (cleaned up). It requires "more than an inchoate hunch."

Drayton argues Officer Jenatscheck's observation of Drayton hitting the fog line was insufficient to establish reasonable suspicion or probable cause because hitting the fog line was not a violation of Iowa traffic law. See Iowa Code § 321.306. Nor was failing to signal while changing lanes after Jenatscheck flashed his lights. See Iowa Code § 321.314.

We agree with the district court these arguments are without merit. Touching the fog line or changing lanes without signaling can establish reasonable suspicion that the driver is committing other violations, such as driving while intoxicated, and it may be enough to establish reasonable suspicion of a traffic violation. See United States v. Herrera-Gonzalez, 474 F.3d 1105, 1110-11 (8th Cir. 2007) (observing defendant cross a fog line for 10 to 15 seconds gave the officer reasonable suspicion supporting a stop for violating Iowa Code § 321.306 because it was not justified by weather conditions or obstacles in his lane); United States v. Pulliam, 265 F.3d 736,

739 (8th Cir. 2001) (defendant who drifted over the fog line twice in two miles gave officer probable cause supporting a stop for violating an Arkansas statute requiring that cars "shall be driven as nearly as practicable entirely within a single lane").

Here, the district court credited Officer Jenatscheck's testimony that, though it was dark, no weather conditions affected Drayton's ability to drive, and no obstacles impeded driving in the center of his lane. Because Drayton appeared to be needlessly swerving within his lane, Jenatscheck had reasonable suspicion to initiate a traffic stop. By this testimony, Officer Jenatscheck "articulate[d] some minimal, objective justification [that is needed to support] an investigatory stop." Merrett, 8 F.4th 743, 750 (quotation omitted). That Jenatscheck was part of a drug-trafficking surveillance operation is of no import. "It is well established that a minor traffic violation provides probable cause for a traffic stop, even if it is mere pretext for a narcotics search." United States v. Rutledge, 61 F.4th 597, 601 (8th Cir. 2023) (cleaned up).

The district court also held that law enforcement had probable cause and reasonable suspicion for an investigatory stop of Drayton's car on February 23 based on his drug activities earlier that day. Drayton further argues on appeal that the CI's tip, law enforcement's observation of Drayton's suspected drug transactions, and the small quantity of drugs found in Drayton's vehicle during the first traffic stop were insufficient to establish probable cause that he was transporting a large quantity of drugs. Again, we disagree.

Both probable cause and reasonable suspicion "may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon information within the knowledge of the officer on the scene if there is some degree of communication." United States v. Edwards, 891 F.3d 708, 711-12 (8th Cir.), cert. denied, 586 U.S. 929 (2018) (quotation omitted); United States v. Rederick, 65 F.4th 961, 964, 966 (8th Cir.), cert. denied, 144 S. Ct. 241

(2023). In United States v. Navarrete-Barron, for example, we held that officers had reasonable suspicion to conduct a traffic stop after seeing the defendant leave a motel room with a duffel bag, based on a tip from the defendant's roommate who was arrested for drug possession earlier that day. 192 F.3d 786, 789-91 (8th Cir. 1999).

Here, though Officer Jenatscheck had not directly spoken to the CI or observed Drayton's suspected drug transactions and the initial traffic stop earlier that day, it is undisputed that other officers informed Jenatscheck of these matters, giving him probable cause and reasonable suspicion for an investigatory traffic stop and search of Drayton's car, which then yielded substantial evidence of ongoing drug trafficking.

For these reasons as more fully set forth in the district court opinions, we affirm the court's conclusion that the second traffic stop of Drayton's car on February 23 was valid under well-established Fourth Amendment authority.

## B. Evidence from the Traffic Stop

Drayton next argues that law enforcement unconstitutionally prolonged the traffic stop so Vry could conduct an open-air dog sniff of Drayton's vehicle. Dog sniffs of the exterior of a vehicle during a lawful traffic stop do not violate the Fourth Amendment. United States v. Rivera, 570 F.3d 1009, 1012 (8th Cir. 2009). However, "unless an officer develops reasonable suspicion while completing the traffic stop that evidence of a drug crime is concealed in the vehicle, he may not prolong the stop until a drug dog arrives and sniffs the vehicle's exterior." Rutledge, 61 F.4th at 602 (citation omitted). This constraint does not apply here. It is undisputed that Vry completed the dog sniff before Jenatscheck completed the traffic stop. By the time Vry's dog detected drugs, Jenatscheck was still in his police car processing Drayton's license. Drayton also provided no evidence that Jenatscheck stalled the stop for Vry to conduct the dog sniff. Accordingly, the stop was not unlawfully prolonged. Furthermore, we have already stated that the officers had

reasonable suspicion that Drayton was engaged in drug-related crimes. Thus, the dog sniff would not have been unlawful even if it had prolonged the stop. See Rederick, 65 F.4th at 966-67.

Officers' collective knowledge about Drayton's activities that day, combined with the dog's positive drug detection, established probable cause for the officers to search Drayton's vehicle. Pursuant to the "automobile exception" to the Fourth Amendment, police may lawfully search the entirety of a vehicle if officers have probable cause to believe that the vehicle contains contraband or evidence of a crime. United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003), cert. denied, 541 U.S. 1081 (2004). Accordingly, the officers lawfully searched Drayton's vehicle and seized the drugs and firearm during the second stop.

## C. Remaining Evidence

Drayton next argues that the district court should have suppressed his statements at the police station, the results of his urine test, and the evidence seized from his home because police only obtained that evidence because of the unlawful traffic stop. See United States v. Simpson, 439 F.3d 490, 493-94 (8th Cir. 2006) (evidence obtained as result of unconstitutional search or seizure must be suppressed). However, we have already established that the second stop was lawful. We therefore need not address the government's arguments that this evidence was sufficiently attenuated from the traffic stop, as the magistrate judge concluded. See United States v. Yorgensen, 845 F.3d 908, 914 (8th Cir.) ("Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance.") (quotation omitted), cert. denied, 583 U.S. 837 (2017).

The evidence could nevertheless be excluded if there were standalone constitutional errors, but Drayton has not established any such error. Officers at the

police station provided Drayton <u>Miranda</u> warnings. Drayton freely waived his <u>Miranda</u> rights and elected to speak to police. He does not argue that officers in any way coerced his statements. He also does not claim that officers committed any constitutional violations when they obtained the urine test, which in any event does not implicate his right against self-incrimination. <u>See</u> <u>Hess v. Ables</u>, 714 F.3d 1048, 1053 (8th Cir. 2013). Finally, Drayton does not argue that any defects exist in the warrant issued to search his home.

## III. Conclusion

We find no constitutional defect in Drayton's traffic stop. Furthermore, law enforcement lawfully seized all subsequent evidence challenged in Drayton's motion to suppress. Accordingly, we affirm.

_____

-10-